**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rosita George, | No. CV-17-08200-PCT-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Office of Navajo and Hopi Indian Relocation, | |
| Defendant. | |

Plaintiff Rosita George seeks judicial review of an administrative decision by Defendant Office of Navajo and Hopi Indian Relocation ("ONHIR") denying her relocation benefits under the Navajo-Hopi Settlement Act. (Doc. 1.) The parties have filed cross motions for summary judgment. (Docs. 28, 32.) The motions are fully briefed, and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); LRCiv 7.2(f). For reasons stated below, Plaintiff's motion is denied and ONHIR's motion is granted.

**I. Background**

In 1882, a large reservation was established in Arizona for use by the Hopi Nation and "such other Indians as the Secretary of the Interior may see fit to settle thereon." *Bedoni v. Navajo-Hopi Indian Relocation Comm'n*, 878 F.2d 1119, 1121 (9th Cir. 1989). Members of the Navajo Nation subsequently settled on the reservation alongside the Hopi. *Id.* In the decades that followed, attempts to resolve inter-tribal conflicts ultimately resulted in the Navajo-Hopi Settlement Act in 1974. *Id.* The Act authorized the district

court to partition the reservation and created ONHIR's predecessor to help relocate tribal members who resided on land partitioned to the other tribe. *Id.* at 1121-22. To be eligible for relocation benefits, a Navajo applicant has the burden of showing that she was (1) a legal resident of the Hopi Partitioned Lands ("HPL") on December 22, 1974, and (2) a head of household on or before July 7, 1986. 25 C.F.R. § 700.147.

Plaintiff was born on July 23, 1965 and was a legal resident of the HPL on December 22, 1974. (A.R. 162.) After graduating high school in 1985, Plaintiff moved in with her sister Lorena Tsinnijinnie. (*Id.*) While living with Lorena, Plaintiff was not responsible for her living expenses. (*Id.* at 107.) In June 1986, Plaintiff moved to an apartment in Flagstaff that she shared with a friend. (*Id.* at 163.)

Plaintiff testified that from June 1985 until June 1986 she was employed by her brother-in-law, Donald Tsinnijinnie, selling Indian arts, including Kachina dolls and lamps. (*Id.* at 111, 162.) Plaintiff contends, without the support of any corroborating documentation, that she was paid $200-300 in cash every two weeks. (*Id.*) After leaving Donald's employ, Plaintiff was hired at Burger King, but quit after one shift, earning a total of $40.54. (*Id.* at 163.) Plaintiff then worked for Allstar Inn in Flagstaff, where she earned a total of $568.00. (*Id.*) Next, Plaintiff worked for Coconino County, earning $134.00 before July 7, 1986. (*Id.*) All told, Plaintiff's documented earnings from January 1, 1986 through July 7, 1986 were $742.62. (*Id.*)

On October 21, 2009, ONHIR denied Plaintiff's application for relocation benefits, finding that she did not obtain head-of-household status during the relevant time period. (*Id.* at 51-52.) Plaintiff appealed the decision. (*Id.* at 58.) Cecelia Sands, Emilia George, and Plaintiff testified during an administrative hearing in August 2013.[1] (*Id.* at 99-133.) The Hearing Officer issued a decision in November 2013 affirming the denial of benefits, which became ONHIR's final decision in December 2013. (*Id.* at 161-68, 171.)

**II. Legal Standard**

---

[1] At times Sands is referred to as Cecelia Simms. Although neither party explains this discrepancy, neither party disputes that all references to Simms actually concern Sands. (*See, e.g.*, Doc. 34 at 6.)

## A. Credibility Findings

"When the decision of [a hearing officer] rests on a negative credibility evaluation, [he] must make findings on the record and must support those findings by pointing to substantial evidence on the record." *Ceguerra v. Sec. of Health & Human Servs.*, 933 F.2d 735, 738 (9th Cir. 1991) (citation omitted). An agency's "credibility findings are granted substantial deference by reviewing courts." *De Valle v. INS*, 901 F.2d 787, 792 (9th Cir. 1990) (citations omitted). The hearing officer alone is "in a position to observe [a witness]'s tone and demeanor, to explore inconsistencies in testimony, and to apply workable and consistent standards in the evaluation of testimonial evidence. He is . . . uniquely qualified to decide whether [a witness's] testimony has about it the ring of truth." *Begay v. Office of Navajo & Hopi Indian Relocation*, 305 F. Supp. 3d 1040, 1049 (D. Ariz. 2018) (*citing Sarvia–Quintanilla v. U.S. INS*, 767 F.2d 1387, 1395 (9th Cir. 1985)).

## B. Summary Judgment

A reviewing court may reverse an ONHIR decision under the Administrative Procedure Act ("APA") if it is arbitrary, capricious, an abuse of discretion, contrary to law, or unsupported by substantial evidence. 5 U.S.C. § 706(2)(A), (E); *see Bedoni*, 878 F.2d at 1122. A decision is arbitrary and capricious if the agency:

> has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Substantial evidence is "more than a mere scintilla but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Chu v. Commodity Futures Trading Comm'n*, 823 F.3d 1245, 1250 (9th Cir. 2016) (internal quotation marks and citation omitted). The standard is deferential. The Court "may not substitute its judgment for that of the agency." *River Runners for Wilderness v. Martin*, 593 F.3d 1064, 1070 (9th Cir. 2010) (internal quotation marks and

citation omitted).

"[S]ummary judgment is an appropriate mechanism for deciding the legal question of whether [ONHIR] could reasonably have found the facts as it did." *Laughter v. ONHIR*, No. CV-16-08196-PCT-DLR, 2017 WL 2806841, at *2 (D. Ariz. June 29, 2017) (internal quotation marks and citation omitted). "[T]he focal point for judicial review [under the APA] should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973). Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

**III. Discussion**

A Navajo applicant has the burden of proving that she was (1) a legal resident of the HPL on December 22, 1974, and (2) a head of household on or before July 7, 1986. 25 C.F.R. § 700.147. Only the second element is at issue. (A.R. 142.)

Under ONHIR regulations, an unmarried applicant qualifies as a "head of household" if she actually maintains and supports herself. 25 C.F.R. § 700.69(a)(1), (a)(2). Although the regulations do not specify an income at which an applicant actually maintains and supports herself, ONHIR "has often held that an applicant who earns at least $1,300 per year can make a prima facie showing of self-supporting status."[2] *Whitehair v. ONHIR*, No. 17-CV-8278-PCT-DGC, 2018 WL 6418665, at *3 (D. Ariz. Dec. 6, 2018) (internal quotation and citation omitted).

In an effort to meet the $1,300 threshold Plaintiff, presented evidence and testimony on her earnings in the first half of 1986. Specifically, Plaintiff offered paystubs evidencing earnings of $742.62 during the relevant period. (A.R. 88-89.) Plaintiff also testified about her work as a sales representative for Donald. According to Plaintiff, she sold 50 Kachina Dolls and between 20-30 lamps per week, earning $200-300 in cash every two weeks. (*Id.*

---

[2] Plaintiff contends, without supporting authority, that the ONHIR erred by not annualizing her $742.62 in documented income earned between January 1, 1986 and July 7, 1986. Finding no authority supporting such a reading of the statute, the Court declines to do so here.

- 4 -

at 105-06.) Sands, who purportedly worked with Plaintiff as a sales representative, testified to the same. (*Id.* at 116-29.)

The Hearing Officer credited Plaintiff's testimony about her employment for Burger King, Allstar Inn, and Coconino County, all of which were supported by paystubs, finding that she earned $742.62 during the relevant period. (*Id.* at 163.) The Hearing Officer, however, rejected all income Plaintiff purportedly made as a sales representative for Donald, finding Plaintiff and Sands' testimony lacked credibility because "there are no documents or records to show that [Plaintiff] earned any money from [Donald]," nor are there "books of account or bookkeeping records in the record[.]" (*Id.* at 163-64.) The Hearing Officer further reasoned that "recollection of events more than 28 years ago without any corroboration, is unreliable."[3] (*Id.* at 164.) Because Plaintiff was unable to meet the $1,300 threshold, and because she was not living on her own and financially supporting herself, the Hearing Officer found that Plaintiff failed to demonstrate that she actually maintained and supported herself. (*Id.* at 161-68.)

Plaintiff argues that the Hearing Officer's decision to deny benefits is not supported by substantial evidence because the Hearing Officer arbitrarily and erroneously rejected testimony concerning wages she earned as a sales representative. In particular, Plaintiff takes issue with the Hearing Officer's emphasis on supporting documentation.[4] As support, Plaintiff cites *Tsosie v. Office of Navajo & Hopi Indian Relocation*, 771 Fed. App'x 426, 426-27 (9th Cir. 2019).[5] In *Tsosie*, the plaintiff provided documentary

---

[3] Notably, Plaintiff's April 2009 letter to ONHIR entitled "Work History" does not include sales representative for Donald in 1986. (A.R. 27.) Plaintiff averred that she was a self-employed sales person of Kachina dolls in 1985. (*Id.*) In response to ONHIR's request for corroborating details about her sales of Kachina dolls, Plaintiff stated that the dolls were "designed and handcrafted by [her] sister" and that she earned "about 200 to 300 [dollars] every week." (*Id.* at 40.)

[4] Plaintiff also argues that the Hearing Officer diverged from ONHIR's precedent, citing another relocation benefits case and attaching the hearing officer's decision from that case as an exhibit. (Doc. 28-3.) The identical argument was raised in *Whitehair v. ONHIR*, No. 17-CV-8278-PCT-DGC, 2018 WL 6418665, at *3 (D. Ariz. Dec. 6, 2018). For reasons stated therein, the Court declines to consider this exhibit.

[5] Plaintiff provided *Tsosie* as supplemental authority to the Court on July 23, 2019. (Doc. 46.)

evidence for $1,200 in earnings and testimonial evidence that she earned $60 per week babysitting her nephew during the relevant time period. The plaintiff's sister testified to the same. Finding the plaintiff and her sister's testimony not credible because it was unsupported by corroborating documentation, the hearing officer did not consider the babysitting income in determining whether the plaintiff was a head of household.

On appeal, the Ninth Circuit vacated the ONHIR's decision, finding that the Agency's "decision to deny benefits was not supported by substantial evidence." *Tsosie*, 771 Fed. App'x at 426. Specifically, the Ninth Circuit rejected the Hearing Officer's finding that the witness testimony was not credible because it was uncorroborated by documentary evidence, reasoning that the ONHIR has previously accepted undocumented income to meet the threshold amount for head of household. *Id.* (citing *O'Daniel v. ONHIR*, No. 07-354-OCT-MHM, 2008 WL 4277899, at *5 (D. Ariz. Sept. 18, 2008)). Critically, the Ninth Circuit opined that "[t]he Hearing Officer did not explain why [the plaintiff's] failure to provide written records should count against her in this instance, despite the [ONHIR's] policy of allowing such income in other instances." *Id.* at 426-27.

The Court finds *Tsosie* distinguishable. Babysitting, at least for family members, is not a job ordinarily accompanied by paystubs or tax returns. This type of informal job fits well within the ONHIR policy, which recognizes that "[i]n some circumstances, individuals may be able to show that they are self-supporting without the benefit of tax returns and wage statements because of the lifestyle on the HPL. It is common for individuals to make a living from livestock or support themselves through odd jobs throughout the Reservation." *O'Daniel*, 2008 WL 4277899, at *5. Under the circumstances, however, the Court finds that Plaintiff's job as a sales representative for Daniel's art business is one that should have supporting documentation. After all, Daniel's art business had at least two employees, operated in New Mexico and Arizona, provided transportation and fuel for sales trips, produced and sold hundreds of dollars in merchandise each week, and accepted payment in cash or check. (*See, e.g.*, A.R. 104-06, 109-14, 118-23.) Moreover, Plaintiff testified that "Donald usually document[ed]

everything on his own paperwork, so I'm sure he has that in the records somewhere." (*Id.* at 109.) Yet, Plaintiff did not offer any records into evidence corroborating how much she made working for Donald, or that his business even existed.

When an applicant alleges income from a business in which it is reasonable under the circumstances to expect corroborating business records, and no such records are produced, the Hearing Officer's decision to reject such allegations is supported by substantial evidence. The Court finds *Benally v. Office of Navajo & Hopi Indian Relocation* and *Whitehair v. Office of Navajo & Hopi Indian Relocation* persuasive on this issue. In *Benally*, the Hearing Officer found that the plaintiff was not a self-supporting head of household after rejecting the plaintiff's claim that he earned $100 per month selling Indian crafts. No. 13-CV-8096-PCT-PGR, 2014 WL 523016, at *2-3 (D. Ariz. Feb. 10, 2014). The district court affirmed the Hearing Officer's decision, finding it was supported by substantial evidence because the plaintiff's claim was "'totally unsupported by contemporaneous documentation' and 'exaggerated and not credible' based on the limited time available to [the plaintiff] to make the items . . . and the 'limited universe of buyers,' which consisted of friends, relatives, and the occasional cowboy." *Id.* at *3 (citing portions of Hearing Officer's Decision).

In *Whitehair*, the plaintiff attempted to show that he actually maintained and supported himself through income from vending machines. 2018 WL 6418665, at *3. The Hearing Officer found that the plaintiff was "a credible witness about his education and about placing some vending machines, but that [the plaintiff's] estimates of income from those vending machines were not credible." *Id.* (citing portions of Hearing Officer's Decision). The Hearing Officer offered a number of reasons as support for her findings, including that the plaintiff provided no records, receipts, or signed contracts from the business, including documents regarding the machines' placement and any royalties he paid for installing his machines in various locations, and that the Hearing Officer found no proof that each of the 32 vending machines was making between 175 and 250 sales every two weeks, as would be required to achieve the income the plaintiff claimed. *Id.* at *3.

The district court found that "the Hearing Officer provided several specific, cogent reasons for discrediting [the plaintiff's] income testimony." *Id.* The district court reasoned that "the Hearing Officer is not required to take at face value [the plaintiff's] testimony that he earned a certain income; the [Hearing] Officer may consider lack of documentation and the unrealistic amount of claimed earnings." *Id.* Nevertheless, because the Hearing Officer found that the plaintiff had a vending machine business, and discredited only the amount of plaintiff's claimed income, the district court remanded for the Hearing Officer to determine "the likely income from that business" and whether such income was sufficient to support a finding of head of household. *Id.* at 5.

Like in *Benally* and *Whitehair*, the Hearing Officer found Plaintiff's claims of cash earnings as a sales representative unsupported. According to the Hearing Officer, "Sands did not keep records of the quantity of merchandise she and [Plaintiff] were expected to sell, she did not track their inventory, she had no records of any individual sale, and she did not know about any formula being used to calculate payments to [Plaintiff] or her." (A.R. 166.) Moreover, the Hearing Officer reasoned that for Plaintiff and Sands to make the amount of income alleged, "the quantity of Kachina dolls and lamps that they would have been required to sell each day was enormous . . . yet, there are no records, statements of account, bookkeeping entries, sales slips, receipts, or anything else to show how many dolls and lamps" were sold. (*Id.*) Nor was there evidence as to the selling price for any individual piece of art. (*Id.*) The Hearing Officer's findings as to the credibility of Plaintiff and Sands concerning their work for Donald was not arbitrary and capricious or unsupported by substantial evidence. The Court therefore affirms the finding of the Hearing Officer that Plaintiff failed to meet her burden of showing that she was a head of household as of July 7, 1986.

To the extent that Plaintiff contends that that she actually supported herself without meeting the $1,300 threshold, this argument also fails. The Hearing Officer's decision was supported by substantial evidence and was neither arbitrary or capricious. For example, Plaintiff lived with her sister and was not responsible for her living expenses until June

1986, at which point she moved into an apartment with a friend. (A.R. 162-63.) Moreover, the Hearing Officer did not find that, nor did Plaintiff offer evidence of, Plaintiff sharing rent and other expenses for the alleged apartment rented in June 1986.[6] (*See, e.g.*, *id.* at 150-58, 163.) Viewing these facts with the deference owed to agency decisions, the Court affirms the finding of the ONHIR that Plaintiff did not meet her burden of showing that he a head of household at the time of the move-off. Accordingly,

**IT IS ORDERED** that Plaintiff's motion for summary judgment (Doc. 28) is **DENIED**.

**IT IS FURTHER ORDERED** that ONHIR's motion for summary judgment (Doc. 32) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of Court is directed to enter judgment consistent with this Order and terminate this case.

Dated this 29th day of August, 2019.

Douglas L. Rayes
United States District Judge

---

[6] In fact, Plaintiff doubled down on her argument that she earned above $1,300 in 1985 and 1986. (A.R. at 158 ("Furthermore [Plaintiff] earned well over the required amount of $1300 both in 1985 and 1986 while maintaining her legal residence.").)